IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE SHANAHAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL AUTO PROTECTION CORP., a Florida corporation, MATRIX FINANCIAL SERVICES, LLC, a Delaware limited liability company, NATION MOTOR CLUB, LLC, a Florida limited liability company,<br><br>Defendants. | Case No. 1:19-cv-3788<br><br>The Honorable John Robert Blakey |

**DEFENDANT NATION MOTOR CLUB, LLC'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Jonathan H. Claydon
Kyle L. Flynn
Thomas J. Sotos
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (Main)
(312) 456-8435 (Facsimile)
claydonj@gtlaw.com
flynnk@gtlaw.com
sotost@gtlaw.com

Defendant Nation Motor Club, LLC ("NMC"), by its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2), respectfully moves the Court to dismiss the Second Amended Complaint ("SAC") filed by Plaintiff Catherine Shanahan ("Plaintiff"). NMC seeks dismissal of the SAC because it fails to state a claim against NMC for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Automatic Telephone Dialers Act, 815 ILCS 305/1 ("ITA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/1 ("ICFA"). In addition, the SAC lacks allegations to support the Court's exercise of personal jurisdiction over NMC and it should therefore be dismissed from this suit.

## FACTUAL BACKGROUND

Plaintiff alleges that she received a phone call from Defendant National Auto Protection Corp. ("NAPC") regarding the sale of extended auto warranties (the "Call"). (SAC at ¶¶ 35, 40.) During the Call, Plaintiff purchased an extended auto warranty ("Service Plan") and shortly after the Call ended, Plaintiff received a confirmation e-mail from NAPC regarding her purchase. (SAC at ¶ 43.) Plaintiff alleges that she subsequently received a contract relative to her Service Plan in the mail and the "contract and the envelope in which it was mailed each contained a logo indicating that her Service Plan was from 'Matrix.'" (SAC at ¶¶ 44-45.) Plaintiff asserts that "Matrix," as used in this context, refers to Defendants Matrix Financial Services, LLC ("Matrix Financial") and Matrix Warranty Solutions, Inc. ("Matrix Warranty") (SAC at ¶ 45.) Plaintiff's Service Plan contract allegedly states that to obtain service, consumers should contact Matrix Warranty Solutions. (SAC at ¶ 46.)

According to Plaintiff's SAC, her Service Plan contract also lists NMC as the administrator for "all 24 hour roadside assistance services…"[1] *Id.* This alleged reference to NMC in Plaintiff's

---

[1] Plaintiff failed to attach the alleged Service Plan contract to the SAC.

Service Plan contract is the only reason that NMC is a defendant in this case. However, there is no allegation in the SAC establishing a relation between NMC and NAPC (the alleged caller) or Matrix Financial and Matrix Warranty (the alleged servicer of the auto warranty purchased by Plaintiff).

Put simply, Plaintiff alleges only that she purchased an auto warranty during the Call and because NMC is referenced as offering roadside assistance services as part of the purchased warranty, Plaintiff has now attempted to allege claims against NMC.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate whenever: (i) a plaintiff fails to allege sufficient facts in support of a claim that would entitle plaintiff to relief; or (ii) where a matter can be disposed of as a matter of law based on the allegations included in the complaint and/or the exhibits attached thereto. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-66 (2007). Under *Iqbal* and *Twombly*, the Supreme Court confirmed that a complaint must contain specific factual allegations showing that the plaintiff is entitled to the relief it is seeking. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 562-66.

To survive a motion to dismiss under Rule 12(b)(6), the SAC's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678. Simply stated, it is incumbent upon the pleader to cross the "line between the conclusory and the factual" and "between the factually neutral and the factually suggestive." *Twombly*,

2

550 U.S. at 557 n.5. Unless the pleader has "nudged" the claims "across the line from conceivable to plausible," the complaint must be dismissed. *Id.* at 570; *see also Hanley v. Green Tree Servicing, Inc.*, 934 F. Supp. 2d 977, 981 (N.D. Ill. 2013) (applying plausibility standard and dismissing TCPA claim).

There are strong policy and fairness considerations underlying the "plausibility" pleading standard. *See Twombly*, 550 U.S. at 559-60. In satisfying the plausibility standard under Fed. R. Civ. P. 8(a)(2), the SAC must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that will survive a motion to dismiss "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "The primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011).

Dismissal under Rule 12(b)(2) for lack of personal jurisdiction is appropriate where a plaintiff fails to plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *See Hitz Entm't Corp. v. Mosley,* No. 16 C 1199, 2017 WL 444073, at *2 n.1, 5–6 (N.D. Ill. Feb. 1, 2017) (citing *Purdue Research Fund. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003)). The party asserting jurisdiction—here, Plaintiff—has the burden of proof, and if affidavits or other evidence are submitted in opposition to the exercise of jurisdiction, Plaintiff must go beyond the pleadings and submit affirmative evidence to support the exercise of jurisdiction. *Hitz*, 2017 WL 444073, at *5-6 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010); *Purdue*, 338 F.3d at 783).

## **ARGUMENT**

**I.      The SAC Fails to State a Claim Against NMC for Violation of the TCPA**

Count I of the SAC purports to assert a violation of the TCPA but fails to allege a sufficient theory of liability against NMC. To be directly liable under § 227(b), "an entity must either

3

physically place the call or be 'so involved in the placing' of the call that the entity essentially made it themselves." *Warciak v. Subway Restaurants, Inc.*, No. 1:16-CV-08694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014)).

Here, there are no allegations that NMC took the steps necessary to physically place a telephone call to Plaintiff. Although Plaintiff does not allege that NMC initiated the Call directly, NMC could still theoretically face vicarious lability under the TCPA through "agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-CV-1216, 2018 WL 835222, at *5 (N.D. Ill. Feb. 13, 2018) (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6584 (2013)).

As a result of NMC's Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. No. 25], Plaintiff's SAC now attempts to include allegations of vicarious liability. But, all of Plaintiff's agency allegations against NMC are based "on information and belief" with no factual support. (SAC at ¶¶ 20-23.) In truth, NMC's only possible tie to Plaintiff is the alleged reference to NMC in the Service Plan contract purchased by Plaintiff during the Call.

Stripped of her conclusory assertions, Plaintiff's only potential theory of liability is this: because NMC is referenced in the Service Plan contract purchased by Plaintiff, it is therefore responsible for the Call made to Plaintiff, regardless of whether NMC participated in, approved of, or was even aware of the Call. This sweeping theory of liability has been expressly rejected by federal courts nationwide and should be rejected here.

This same issue has been addressed by courts in the context of faxes, sent in violation of the TCPA, which advertised the goods or services of a defendant despite that defendant having no

4

role in the transmission of the faxes. The Seventh Circuit has consistently held that a reading of TCPA and its regulations that would impose strict liability on a company whose goods or services were advertised "would lead to absurd and unintended results." *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 797 (7th Cir. 2016) (citing *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016)); *see also Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 888 (7th Cir. 2018) ("under a strict liability approach, a competitor could send out thousands of unsolicited faxes promoting another company's goods or services, thereby bankrupting that company, even though the company played no part in sending or authorizing the faxes.").

Federal courts have dismissed these conclusory TCPA claims at the pleadings stage. In *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, the court granted the defendant Hygenic's motion to dismiss, finding that although Hygenic manufactured BioFreeze, it could not be a sender of the fax at issue simply because the true sender, defendant Vitaminerals, sent a fax that asked the recipient to purchase BioFreeze through Vitaminerals. No. 5:16CV2183, 2017 WL 27263, at *5 (N.D. Ohio Jan. 3, 2017). The court provided its own analogy: "it would be akin to a court finding that the vending machine company's advertisement creates TCPA liability for the soft drink companies whose drinks are sold in the vending machines and are promoted in the ads because the soft drink companies manufacture the drinks and benefit when customers buy their products." *Id.* The court held that "if this were the case, TCPA liability would automatically attach to any manufacturer or distributor of any product promoted in an improperly sent fax advertisement." *Id.*

Similarly, Plaintiff's claims against NMC should be dismissed because TCPA liability cannot automatically attach to NMC. Using the court's analogy from *Comprehensive Health*,

5

Plaintiff is requesting that the court find that NAPC's alleged call to Plaintiff (vending machine company's faxed advertisements) should create liability for NMC (soft drink companies) because it has an alleged connection to the warranty sold during the Call (because drinks are sold in the vending machines promoted in the faxed advertisements).

"The history and the language of the TCPA and the pertinent regulations do not create such liability; nor does binding case law or common sense." *Id.* "If such a broad reading of Plaintiff's definition of 'sender' were applied by courts, entities could engage in 'sabotage liability.'" *Id.* (quoting *Cin–Q Autos., Inc. v. Buccaneers Ltd. P'ship,* 2014 WL 7224943, at *6 (M.D. Fla., Dec. 17, 2014)) ("Universal liability for complete inaction was not contemplated by Congress in passing the TCPA and does not appear to have been contemplated by the FCC in crafting and interpreting its regulations.").

Several other courts have granted motions to dismiss TCPA claims that are based solely on a defendant's good or services being included in a communication that allegedly violates the TCPA. *See e.g. Health One Med. Ctr., Eastpointe, P.L.L.C. v. Bristol-Myers Squibb Co.*, No. 16-CV-13815, 2017 WL 3017521, at *4 (E.D. Mich. July 17, 2017); *Dairyland Animal Clinic, S.C. v. Amatheon, Inc.*, No. 16-CV-21820, 2016 WL 11129919, at *3 (S.D. Fla. Sept. 30, 2016); *Bais Yaakov v. Varitronics, LLC*, 2015 WL 1529279, at *4–5 (D. Minn. April 3, 2015) (holding that the complaint failed to state a claim of TCPA liability when the fax advertisements merely promoted the defendant's products). To permit Plaintiff's claim to advance against NMC simply because it is referenced in a Service Plan contract purchased by Plaintiff would, in the words of the Seventh Circuit, "lead to absurd and unintended results." *Paldo Sign*, 825 F.3d at 797. For these reasons, Count I should be dismissed.

**II.     The SAC Fails to State a Claim Against NMC for Violation of the ITA**

As discussed above, Plaintiff has failed to state a claim against NMC. For the same reasons that Plaintiff's TCPA claim (Count I) must be dismissed, Plaintiff's claim under the ITA (Count II) must also be dismissed. Plaintiff has failed to allege that NMC has violated the ITA either directly or vicariously. 815 ILCS 305/15.

In addition, the ITA requires Plaintiff to suffer an injury and incur "actual damages" in order to bring a claim under the ITA. 815 ILCS 305/30(c). Courts have dismissed similar ITA claims for failure to allege actual damages. In *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, the court examined an ITA claim and held that "where actual injury or damages are an element of a claim, as they are here, a plaintiff must state sufficient facts alleging that she has suffered an injury or damages." 861 F. Supp. 2d 898, 906 (N.D. Ill. 2012) (citing *Yu v. Int'l Bus. Machs. Corp.*, 732 N.E.2d 1173, 1177 (Ill. App. Ct. 1st Dist. 2000) (affirming district court's dismissal of plaintiff's complaint and holding that plaintiff's claims, which required actual injury or damage, constituted mere "conjecture and speculation," because plaintiff failed to allege any actual harm)). The *Thrasher* court dismissed the plaintiff's ITA claim because plaintiff had "only alleged injury or damages in a most conclusory manner as her complaint lack[ed] any facts about how precisely she was damaged." *Id.*

Similarly, Plaintiff has not pled factual allegations that she suffered any actual damages. Instead, Plaintiff alleges, on behalf of the putative class, that they suffered loss of their "time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them pursuant to the terms of the phone contracts, monies paid for Service Plans, invasion of their privacy, and the nuisance of receiving the calls." (SAC at ¶ 83.) As discussed below, these alleged damages are not "actual damages." *See infra* § III. Plaintiff's alleged damages

do not satisfy the damages element of an ITA claim, and this is an additional ground for dismissal of the ITA claim.

**III.    The SAC Fails to State a Claim Under the ICFA**

A plaintiff must plead an ICFA claim with specificity. *See Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Fraud claims under the ICFA are analyzed under the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The pleading "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 736. Similar to Plaintiff's TCPA and ITA claims, Plaintiff's ICFA claim does not plead facts in adherence with the plausibility standard, which alone warrants dismissal of the ICFA claim against NMC.

Further, the SAC lacks the specificity required under the heightened pleading standard of Rule 9(b), as Plaintiff fails to establish how the Call made to Plaintiff was fraudulent. The SAC is lacking in the who, what, where, and how of the alleged fraud. The ICFA claim should be dismissed on these grounds alone. In addition, even if the ICFA claim contained the specificity required by Rule 9(b), it would still fail at the pleading stage because Plaintiff's ICFA claim does not sufficiently plead that NMC's actions were unfair or deceptive, in violation of Section 2 of the ICFA, and fails to sufficiently allege that she suffered actual damages.

The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505-2; *Greenberger*, 631 F.3d at 399. Plaintiff must plead facts alleging: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on

8

the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 1st Dist. 2009).

Instead of pleading sufficient facts under the ICFA, the SAC simply alleges that Defendants violated the ICFA by engaging in "unfair or unlawful business practices by making (or causing to be made) calls to Plaintiff and members of the Subclass using an autodialer to play a prerecorded message advertising or soliciting Defendants' good and/or services, in violation of the ATDA and/or TCPA."[2] (SAC at ¶ 81.) If a court seeks to analyze whether these acts are "unfair" under the ICFA, the Illinois Supreme Court has provided three factors for courts to consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (2002).

Here, the three *Robinson* factors are not met, and Plaintiff's conclusory allegations cannot serve as the basis for an Illinois consumer fraud claim. With respect to the first *Robinson* factor, Plaintiff fails to allege that NMC's alleged acts offend public policy, and public policy is not mentioned anywhere in the SAC. Further, Plaintiff's allegation that the alleged call was an unlawful practice is tellingly void of any factual specificity as to how the call was "immoral, unethical, oppressive, or unscrupulous." *See Robinson*, 775 N.E.2d at 961. Similar to the single phone call at issue here, Illinois courts have consistently held that sending a single fax is not oppressive or unscrupulous conduct such that a defendant can be liable for consumer fraud. *See Mussat v. Power Liens, LLC*, No. 13-CV-7853, 2014 WL 3610991, at *3 (N.D. Ill. July 21,

---

[2] Plaintiff's allegation that any person who knowingly violates the ITA commits an unlawful practice within the meaning of the ICFA is irrelevant because Plaintiff's ITA claim lacks merit. *See supra* § II.

9

2014) (dismissing plaintiff's ICFA claim because a "single one-page fax cannot be said to burden [plaintiff] to an oppressive level"); *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616-17 (N.D. Ill. 2009) ("The improper use of one piece of paper, a small amount of toner and a few seconds of an employee's time is not oppressive conduct, nor does it fit within the definition of any other terms."); *Urban Elevator Serv., LLC v. Stryker Lubricant Distribs. Inc.*, No. 15-CV-2128, 2015 WL 6736676, at *3 (N.D. Ill. Nov. 4, 2015) (agreeing with plaintiff's admission that the one-page fax it received did not cause it "substantial injury" for purposes of the ICFA).

Plaintiff has also failed to plead a "substantial injury" or "actual damages" sufficient to state an ICFA claim. The damages Plaintiff alleged, on behalf of the putative class, is loss of their "time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them pursuant to the terms of the phone contracts, monies paid for Service Plans, invasion of their privacy, and the nuisance of receiving the calls." (SAC at ¶ 83.) However, "[t]o bring an action pursuant to the ICFA, a plaintiff must allege 'actual damages' and the 'actual damages' must arise from purely economic injuries." *Thrasher*, 861 F. Supp. 2d at 912; *see also Camasta*, 761 F.3d at 739 ("In a private ICFA action, the element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'"). "Actual damages must be calculable and 'measured by the plaintiff's loss.'" *Thrasher*, 861 F. Supp. 2d at 913 (quoting *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 1st Dist. 2009)); *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 55 (Ill. 2005) (Karmeier, J. concurring) (noting that a plaintiff must allege that she was "harmed in a concrete, ascertainable way," meaning that "the defendant's deception made plaintiff tangibly worse off").

10

Plaintiff's damage allegations do not constitute "actual damages" because they do not arise from purely economic injuries or pecuniary loss. Plaintiff may argue that the alleged damages of "monies paid to receive the calls" or "monies paid for Service Plans" is economic harm that constitutes "actual damages" under the ICFA; however, this category of damages has been rejected as "actual damages" under the ICFA in a similar TCPA case. The plaintiff in *Warciak v. One, Inc.* sought damages for the "cost associated with receiving the unwanted and unsolicited text messages." No. 16 C 7426, 2016 WL 7374278, at *4 (N.D. Ill. Dec. 20, 2016). The court held that this category of damages is "ephemeral at best" and "are so negligible from an economic standpoint as to render any damages unquantifiable" under the ICFA. *Id.* Similarly, Plaintiff's alleged damages are negligible from an economic standpoint and Plaintiff's failure to allege actual damages is fatal to her ICFA claim.

## IV. The Court Cannot Exercise Personal Jurisdiction Over NMC

The Court may exercise personal jurisdiction over nonresident NMC only "if it would be allowed under either the Illinois Constitution or the United States Constitution." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Because Illinois' long-arm statute is coextensive with the Fourteenth Amendment's Due Process Clause, "the state statutory and federal constitutional inquiries merge." *Tamburo*, 601 F.3d at 700. This standard applies in TCPA cases. *See Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018) ("Because the TCPA does not authorize nationwide service of process, the court looks to Illinois law for the limitation on the exercise of personal jurisdiction") (internal alteration, citation, and quotations omitted).

To satisfy due process, there must be "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

11

Sufficient contacts only exist where a defendant's conduct shows that it purposely availed itself of the benefits of the forum such that it would reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Jurisdiction can be established either generally or specifically. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). "General jurisdiction over a defendant [] requires that the defendant be 'essentially at home' in the forum." *Erno Kalman Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction 'refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Brook*, 873 F.3d at 552 (quoting *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009)).

### A. The Court Lacks General Jurisdiction Over NMC

"For 'general,' 'all-purpose' jurisdiction, the defendant's 'continuous and systematic' contacts must put him 'at home' in the forum state." *Peters v. Sloan*, 762 F. App'x 344, 346 (7th Cir. 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). This condition is only met in two places: "the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). NMC is a Delaware limited liability company with its principal place of business in Florida. (NMC Decl. ¶ 2, attached hereto as Exhibit A.) NMC does not own or lease any property or own assets in Illinois. (NMC Decl. ¶ 3.) Indeed, there are no locations in Illinois where NMC has ever conducted operations of any kind, let alone substantial operations. (NMC Decl. ¶ 4.)

NMC, being neither incorporated in nor with its principal offices in Illinois, lacks the "continuous and systematic" connections with Illinois necessary for a finding of general jurisdiction. The Court should find that no general jurisdiction exists over NMC. *See First Nat'l*

12

*Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 906 (N.D. Ill. 2006) (no general jurisdiction where defendant "(1) made 'at least twenty' phone calls to 'probably five individuals' in Illinois; (2) traveled to a conference in Chicago and solicited business from 'five to six' institutions while there; (3) solicited financing from [a broker] concerning another prospective lease transaction; and (4) employed Illinois counsel to file a lawsuit seeking a tax refund from Illinois in an Illinois court"); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1193 (7th Cir. 1980) (no general jurisdiction over defendant whose agent had transacted business in Illinois approximately 25 times, resulting in over $49 million in transactions).

### B.    The Court Lacks Specific Jurisdiction Over NMC

Lacking general jurisdiction, personal jurisdiction over NMC only lies via specific jurisdiction. "For 'specific' personal jurisdiction, the defendant's connections to forum state must give rise to the events that form the basis of the suit." *Peters*, 762 F. App'x at 346 (quoting *Daimler*, 571 U.S. at 127). "Specific jurisdiction requires that the defendant's contacts with the forum state are what 'give rise to the liabilities sued on' and are 'continuous and systematic.'" *Michael W. Kincaid, DDS, Inc. v. Synchrony Fin.*, No. 16-CV-796, 2016 WL 4245533, at *5 (N.D. Ill. Aug. 11, 2016) (quoting *Int'l Shoe*, 326 U.S. at 317). "The contacts relevant to specific jurisdiction are those contacts with the forum state that are both related to the lawsuit and created by the defendant." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). Plaintiff has not pled facts to show that such connections exist.

NMC did not initiate the single alleged call at issue, the critical fulcrum for tying a defendant in this lawsuit to Illinois. (NMC Decl. ¶ 5.) This is uncontroverted by Plaintiff. Rather, Plaintiff attributes the alleged unlawful actions to NAPC. These vague allegations demonstrate that no factual basis exists to show that NMC is connected to the alleged unlawful acts in this case.

13

*See Davis v. Bank of Am. Corp.*, No. 16 C 5993, 2017 WL 569159, at *1 (N.D. Ill. Feb. 13, 2017) ("A complaint based on a theory of collective responsibility must be dismissed") (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

Moreover, these unspecified allegations fail to show that NMC has an "'affiliation between the forum and the underlying controversy'" via an "'activity or an occurrence that takes place in the forum state.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919). Thus, Plaintiff has not pled that NMC is subject to specific jurisdiction resulting from its own actions.

Plaintiff's threadbare allegation that NMC is liable because NAPC called on NMC's behalf also fails to establish specific jurisdiction. Without substantive basis or support, Plaintiff appears to claim that NMC is somehow responsible for the alleged call under a theory of vicarious liability. (SAC at ¶ 20.) However, as noted above, Plaintiff fails to properly allege that vicarious liability exists.

Although an agency relationship suggesting vicarious liability may be relevant to show specific jurisdiction, conclusory allegations controverted by fact will not support such a finding. *See Cunningham,* 2018 WL 835222, at *11-12 (dismissing, for lack of specific personal jurisdiction, plaintiff's claims grounded in allegations of an agency relationship amongst defendants where those allegations were conclusory and contradicted by defendants' declarations).

Plaintiff has made no factual allegations substantiating that an agency relationship existed between NMC and the alleged caller. These failures are compounded by NMC's declaration, which shows that NMC did not authorize, direct, oversee, or manage any party who might have initiated the alleged call. (NMC Decl. ¶¶ 5–6.) Plaintiff's unfounded, conclusory allegations of vicarious liability should be disregarded and the Complaint dismissed for lack of personal jurisdiction.

14

To force NMC to travel to this forum to defend itself based solely on Plaintiff's vague and unsubstantiated allegations would offend notions of fair play and substantial justice. Therefore, the Court should dismiss NMC from this case.

## CONCLUSION

For the foregoing reasons, Defendant Nation Motor Club, LLC respectfully requests that the Court enter an order dismissing the claims against it with prejudice and striking the class allegations in Plaintiff's Second Amended Complaint.

NATION MOTOR CLUB, LLC

Dated: January 2, 2020

By: */s/ Jonathan H. Claydon*
One of Its Attorneys

Jonathan H. Claydon
Kyle L. Flynn
Thomas J. Sotos
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (Main)
(312) 456-8435 (Facsimile)
claydonj@gtlaw.com
flynnk@gtlaw.com
sotost@gtlaw.com

**CERTIFICATE OF SERVICE**

   I, Kyle Flynn, an attorney, certify that I electronically filed Defendant Nation Motor Club, LLC's Motion to Dismiss Plaintiff's Second Amended Class Action Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 2nd day of January, 2020.

                  */s/ Kyle L. Flynn*
                  Attorney for Nation Motor Club, LLC