CONFIDENTIAL



# DIRECT MARKETING
# PRODUCER AGREEMENT

THIS AGREEMENT, effective June 1_____, 20___, (the "Effective Date"), is by and between Matrix Warranty Solutions, Inc., a Nevada corporation with its principal offices located at 805 third Ave., Suite 800, New York, New York 10022 (individually and collectively with its affiliated entities, the "Company"), and National Auto Protection Corp. ("Producer") located at 1665 Palm Beach Lakes Blvd., Suite 215, West Palm Beach, FL 33401.

WHEREAS, the Company is authorized to market, sell, issue, and administer motor vehicle service agreements, vehicle protection agreements, and other after-market agreements (collectively, "Service Agreements"), and Producer is a licensed call center; and

WHEREAS, the Company desires to appoint Producer as an authorized sales representative to market Service Agreements to Producer's customers, and Producer desires to accept such appointment, all in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants contained herein, the parties hereby agree as follows:

1. **Producer's Authority.** The Company hereby authorizes Producer to offer and sell to Producer's customers those Service Agreement plans identified in Exhibit A attached to this Agreement as may be revised from time to time upon the written authorization of the Company (the "Service Agreement Schedule"). All Service Agreements shall be sold only on the forms prescribed by the Company and in accordance with and subject to the rules, coverages, guidelines, and costs authorized by the Company and furnished to Producer in writing (collectively, the "Program"). Producer shall not have any authority to alter, modify, waive, or discharge any terms of the Program without the Company's prior written consent. The Company may revise the Program terms at any time upon thirty (30) days' prior written notice to Producer, and Producer shall conform to such revisions. The Company, its partners and affiliates, shall not have any liability for, and Producer shall indemnify, defend, and hold harmless the Company, its partners and affiliates, with respect to any Service Agreements sold in violation of the terms of the Program or this Agreement.

2. **Reports and Remittances.** Within ten (10) days after the end of each calendar month, Producer shall furnish a report to the Company of all Service Agreements sold during such month. The form and content of the report shall be prescribed by the Company. The report shall be accompanied by Producer's payment of the net Producer cost due the Company for all Service Agreements sold during the month, as set forth in Exhibit A to this Agreement as may be revised from time to time (the "Producer Cost"). The Company may revise the Producer Cost at any time upon thirty (30) days' prior written notice to the Producer, and Producer shall adhere to the revised cost structure for all business reported thereafter.

3. **Compensation and Refunds.** As its sole compensation from the sale of the Company's Service Agreements, Producer shall be permitted to retain the difference between the retail price collected by Producer from the sale of the Service Agreements and the Producer Cost (the "Producer Compensation"). Producer shall be obligated to refund a pro rata share of the Producer Compensation with respect to any Service Agreement that is canceled or surrendered prior to its scheduled expiration date, which refund shall be calculated at the same rate specified in the Service Agreement for calculating the Service Agreement holder's refund. The Company and Producer shall establish an appropriate mechanism to assure the proper disposition and payment of all refunds. Producer shall not be entitled to any portion of any cancellation fee set forth in the Service Agreement. Producer's obligation to make refunds of the Producer Compensation shall survive the termination of this Agreement.

4. **Service Agreement Benefits.** The Company shall be solely responsible for administering and paying all benefits under its Service Agreements. Producer shall have no authority to adjudicate, settle, compromise, or pay any benefits under the Service Agreements. In the event a Service Agreement holder attempts to make a claim under a Service Agreement directly with Producer, Producer shall instruct the holder to follow the claims reporting instructions set forth in the Service Agreement and shall provide all reasonable and necessary cooperation and assistance to the holder.

5. **Mechanical Breakdown Repairs.** If Producer maintains a service department and performs repairs under Service Agreements issued by the Company, the Company shall reimburse Producer for the cost of such repair services at the amounts and in the manner provided by this Agreement. Prior to commencing repairs, Producer shall diagnose the nature and cause of the mechanical breakdown and prepare an estimate of the cost of the required repairs. In preparing its estimated cost of repairs,

**EXHIBIT 1**      MATRIX_0001

CONFIDENTIAL

Producer shall utilize its normal retail labor rate, as filed with and approved in advance by the Company, for the repair time required as specified in the recognized labor manual used by Producer and approved by the Company (e.g., Motors (All Data), Chilton, Mitchell, Factory, etc.), and the manufacturer's published suggested retail price for required parts. Producer shall obtain the Company's prior approval before commencing any repair work for which reimbursement is sought from the Company. In order to obtain reimbursement for repair services, Producer shall comply with the following additional conditions:

| | | |
|---|---|---|
| CLAIM FORMS | a. | Producer must furnish the Company a completed claim advice, a repair order or a form provided by the Company, not more than ninety (90) days after the date the repair is completed. The Company shall reimburse Producer for the approved repair within thirty (30) days after receipt of the claim advice. |
| MAINTENANCE REQUIREMENTS | b. | If requested by the Company, Producer must determine that the owner of a covered new vehicle has receipts for completion of the manufacturer's required maintenance services. |
| INSPECTION | c. | If requested by the Company, Producer must permit the Company to inspect the covered vehicle prior to commencement of repairs and/or perform a factory oil consumption test if excessive use of engine oil is reported or alleged. |
| REPAIRER'S GUARANTY | d. | Producer must guaranty to the Service Agreement holder and the Company all workmanship and parts in connection with a covered repair it performs or orders for a period of ninety (90) days after the date the repair is completed and, if requested by the Company, keep all parts removed from the vehicle in a safe place for up to thirty (30) days. |
| USED UNITS | e. | Producer must certify that a used unit covered by a Service Agreement was inspected and found in good working order at the time of sale. Producer shall be liable to the Company for the cost of repairs to used units required during the first thirty (30) days and 3,000 miles (if applicable) following the sale of the Service Agreement. |
| UNAUTHORIZED CONTRACTS | f. | In the event repairs are required under a Service Agreement sold by Producer in violation of this Agreement, Producer shall be required to provide such repairs without reimbursement by the Company or shall reimburse the Company for any repair payments advanced by the Company. |

6. **Producer Covenants.** The Producer hereby makes the following general representations and covenants to the Company:

| | | |
|---|---|---|
| LICENSES | a. | Producer and all persons employed by Producer to perform any activities authorized by this Agreement shall procure and maintain in good standing all licenses, permits, and certifications required under all applicable state and federal laws with respect to such activities. |
| LAWS AND REGULATIONS | b. | Producer shall familiarize itself and comply with all state and federal laws and regulations applicable to its activities authorized by this Agreement. |
| PRIVACY | c. | Producer shall not use for any purpose other than as required by this Agreement or disclose to any other person or entity the names, personal information, and other information concerning the subject matter of the Service Agreements without first affording the Company with a reasonable opportunity to confirm that such use or disclosure complies with any applicable federal or state privacy laws. |
| RULES OF THE COMPANY | d. | Producer shall adhere to all rules, manuals, procedures, and instructions prescribed by the Company concerning the Program and furnished to Producer in writing. |
| UNFAIR TRADE PRACTICES | e. | Producer shall not engage in unlawful discrimination, misrepresentation, or any unfair trade practice pertaining to the Program that is prohibited by law. |
| PROPERTY AND SUPPLIES | f. | Producer shall maintain in a secure and safe place, and upon request shall account to the Company for, all supplies and materials furnished by the Company to Producer with respect to the Program Service Agreements and shall return them to the Company if this Agreement is terminated. |
| EXPENSES | g. | Except as otherwise expressly provided in this Agreement, Producer shall bear all of its business expenses and marketing costs in the performance of its duties and obligations under |

MATRIX_0002

|  |  |  |
|---|---|---|
|  |  | this Agreement and shall not incur any expense on behalf of the Company without the Company's prior written approval |
| NEGOTIABLE INSTRUMENTS | h. | Producer shall not negotiate or endorse any check or other negotiable instrument made payable to the Company. |
| LEGAL NOTICES | i. | Producer shall promptly notify the Company of its receipt of legal notices or legal complaints affecting or naming the Company or the Program Service Agreements and shall immediately forward same to the Company. |
| ADVERTISING | j. | Producer shall not publish, circulate, or display any advertisements, circulars, brochures, or other materials that name or refer to the Company, its partners or affiliates, their respective products, or their respective businesses unless the content thereof has received the prior written approval of the Company, its partners or affiliates, as appropriate. |
| INDUCEMENT TO LAPSE | k. | While this Agreement is in effect or at any time thereafter, Producer shall not induce the lapse, cancellation, or termination of any Service Agreement sold pursuant to this Agreement. |
| EMPLOYEE AND SUB-AGENT COMPENSATION | l. | Producer shall be responsible for the payment of compensation and commissions to all permitted sub-agents and employees utilized or employed by Producer in the performance of its duties and obligations under this Agreement or the Program and shall hold harmless the Company, its partners or affiliates, for same. |
| AUDIT | m. | Subject to reasonable prior notice, Producer shall grant the Company and its authorized representatives, accountants, attorneys, and investigators right of free access during normal business hours at Producer's place of business for the purpose of inspecting and auditing the books and records maintained by Producer with respect to the Program Service Agreements sold by the Producer. The Company, at its expense, may make copies and retain any of such books and records which pertain to the Program. |
| MODIFICATION OR WAIVER OF TERMS | n. | Producer shall not have any authority to modify, waive, alter, or change, orally or in writing, any of the terms and conditions of a Service Agreement, whether prior to or after the sale of the Service Agreement. |
| FIDUCIARY FUNDS | o. | Producer shall be considered a fiduciary of all monies received by Producer on behalf of the Company or otherwise due the Company and shall not convert same to its own use until remittance to the Company or otherwise applied by Producer in accordance with this Agreement. |
| COOPERATION | p. | Producer shall cooperate with the Company in all matters relating to the Program Service Agreements and this Agreement. |
| FINANCING | q. | With respect to any Service Agreement that is financed, Producer shall comply with all applicable state and federal lending laws, including but not limited to the Federal Truth In Lending Act and Regulation Z thereunder. |

7. **Producer Indemnification.** Producer shall indemnify, defend, and hold harmless the Company, its partners, agents and employees, and their respective successors and assigns from and against all claims, losses, damages, liabilities, judgments, penalties, fines and expenses, including but not limited to reasonable attorneys' fees and costs, resulting from or arising out of (a) any wrongful or negligent act, error, or omission committed by Producer or its employees in connection with the sale of the Service Agreements or the activities authorized by this Agreement, (b) any Service Agreement sold in violation of this Agreement or the Program, including but without limitation any claim for benefits arising under such Service Agreement, or (c) the material breach by Producer of any of the terms of this Agreement.

MATRIX_0003

CONFIDENTIAL

8. **Company Indemnification.** The Company shall indemnify, defend and hold harmless Producer, its partners, agents and employees, and their respective successors and assigns from and against any and all claims, losses, damages, liabilities, judgments, penalties, fines and expenses, including, but not limited to, reasonable attorneys' fees and costs, to the extent resulting from or arising out of (a) any wrongful or negligent act, error, or omission committed by the Company or its employees, including, without limitation, the failure of the Company to fulfill any obligation under the Program or under any Service Agreement issued in accordance with this Agreement, (b) the failure of the Company to observe and comply with any state or federal law applicable to the business conducted by the Company pursuant to this Agreement, and (c) the material breach by the Company of any of the terms of this Agreement.

9. **Effective Date and Termination.** This Agreement shall become effective as of the Effective Date. This Agreement may be terminated by either party by giving thirty (30) days' advance written notice to the other party, provided that this Agreement may be terminated immediately for any of the following reasons: (a) the failure of the other party to cure any material breach of this Agreement committed by such party within thirty (30) days after written notice of the breach has been provided by the terminating party; (b) the filing of a voluntary or involuntary bankruptcy petition involving the other party, or the appointment of a receiver, conservator, supervisors, or similar official concerning the other party; or (c) the assignment by the other party of all or substantially all of its assets for the benefit of its creditors. The termination of this Agreement shall not affect or diminish the obligations of the parties under this Agreement with respect to Service Agreements sold prior to the termination date.

10. **Miscellaneous.** The following provisions shall apply to the parties' obligations under this Agreement:

| | | |
|---|---|---|
| GOVERNING LAW | a. | This Agreement shall be interpreted and enforced in accordance with the laws of Ohio, without reference to the conflicts of laws principles thereof. |
| ENTIRE AGREEMENT | b. | This Agreement and the exhibits hereto constitute the entire agreement and understandings of the parties relating to the subject matter of this Agreement and supersede all prior written or oral agreements or understandings of the parties. |
| INDEPENDENT CONTRACTOR | c. | Producer shall at all times be considered an independent contractor, and nothing in this Agreement is intended or shall be construed to create an employment, joint venture, or partnership relationship between the Company and Producer or between the Company and any of Producer's employees, agents, and sub-contractors. |
| WAIVER | d. | The failure by either party to exercise or enforce any of its rights or remedies under this Agreement shall not be construed as a waiver or relinquishment to any extent of such party's right to assert or rely upon any such provision, right, or remedy. |
| SUCCESSORS AND ASSIGNS | e. | Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective lawful successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective lawful successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement. |
| ASSIGNMENT | f. | Neither this Agreement, nor any of the authority, rights, duties, obligations, liabilities afforded or created by this Agreement may be assigned or delegated by either party to any other person without the prior written consent of the other party. |
| MODIFICATIONS | g. | This Agreement and any of the exhibits hereto may not be amended or modified except by written agreement signed by both of the parties hereto. |
| SEVERABILITY | h. | If one or more provisions of this Agreement are held to be unenforceable under applicable laws, such provision shall be excluded from this Agreement and the balance of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms. |
| NOTICES | i. | All notices, demands, or communications required under this Agreement shall be in writing, delivered personally, by mail, by facsimile, or by electronic mail at the respective addresses of the parties. |

MATRIX_0004

CONFIDENTIAL

- 5 -

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

MATRIX WARRANTY SOLUTIONS, INC.

By: *[signature]*

Dated: 6/13/16

By: *[signature]*

Gustav Renny & William Finneran
By: _____

Dated: June 1, 2016

MATRIX_0005